The decision and order of this Court entered herein on December 31, 2013 (112 AD3d 549 [1st Dept 2013]) is hereby recalled and vacated (*see* 2014 NY Slip Op 67576[U] [2014] [decided simultaneously herewith]).

■ MICHAEL OLSEN, Plaintiff, v CITY OF NEW YORK et al., Respondents, and SKANSKA USA BUILDING, INC., Appellant, et al., Defendants. (And a Third-Party Action.) MICHAEL OLSEN, Respondent-Appellant, v HUDSON RIVER PARK TRUST et al., Appellants-Respondents, and THE MCKISSACK GROUP, INC., Respondent, et al., Defendant. SKANSKA USA BUILDING, INC., Third-Party Plaintiff-Appellant-Respondent, v SPEARIN PRESTON & BURROWS, INC., Third-Party Defendant-Respondent-Appellant. [982 NYS2d 757]—Appeals and cross appeals having been taken to this Court by the above-named appellants from orders of the Supreme Court, New York County (Jeffrey Oing, J.), entered on or about September 24, 2012 and April 15, 2013, and said appeals and cross appeals having been argued by counsel for the respective parties; and due deliberation having been had thereon, and upon the stipulation of the parties hereto filed March 6, 2014 and March 11, 2014, it is unanimously ordered that said appeals and cross appeals be and the same are hereby withdrawn in accordance with the terms of the aforesaid stipulation. Concur—Tom, J.P., Friedman, Renwick, Feinman and Clark, JJ.

■ MATTIE GLISPY, Plaintiff, v RIVERBAY CORPORATION, Respondent, and PROTO CONSTRUCTION & DEVELOPMENT CORP., Appellant, et al., Defendant. [983 NYS2d 13]—

Order, Supreme Court, Bronx County (Julia Rodriguez, J.), entered October 5, 2012, which denied defendant Proto Construction & Development Corp.'s (Proto) motion for summary judgment dismissing the complaint and cross claims against it, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

Plaintiff was injured on July 10, 2009 when she tripped over a piece of wood blocking or "mud sill" under a support column of a sidewalk shed (a scaffold erected over a walkway to protect pedestrians). The structure was purchased by the property owner, defendant Riverbay Corporation, and installed under contract by Proto in front of Building 8 of the Co-op City housing complex in February 2002. There is no evidence that Proto inspected or performed any maintenance or repair work on the

subject sidewalk shed thereafter. Nor is there any indication that the structure was in any way defective during the ensuing seven years so as to afford a basis for contribution or common-law indemnification predicated on liability arising under *Espinal v Melville Snow Contrs.* (98 NY2d 136 [2002]) and its progeny (*see McCarthy v Turner Constr., Inc.,* 17 NY3d 369, 375 [2011]; *Cahn v Ward Trucking, Inc.,* 101 AD3d 458 [1st Dept 2012]).

Plaintiff has not filed a brief. In controversy is whether Proto is obligated to indemnify Riverbay for plaintiff's injuries pursuant to another series of contracts entered into by the parties in 2005. At issue is whether the contract documents contemplate a single performance, as Riverbay contends, or a series of performances under separate contracts (designated "bidding packages") governing work to be performed at different sites, each of which is comprised of several buildings. At the time of the accident, work was under way on other buildings, but the work to be performed on Building 8 had not yet commenced. Thus, Proto argues that its contractual obligation to maintain the sidewalk shed had not yet arisen under the terms of the applicable bidding package.

The general conditions governing work on all of Riverbay's buildings provide that the contractor "shall maintain fences, sheds, guards, barricades, warning lights, etc.," and because Riverbay would continue to occupy the premises "during the entire period of construction," Proto was to avoid interference with Riverbay's use of the premises and "[c]onfine operations at the site to the areas permitted under the Contract."

The term "contract" is defined in the individual packages, which list the contract documents (including the general conditions). Each package also contains an indemnification clause providing, in material part, that "the Contractor shall defend, indemnify and hold harmless Riverbay . . . against all claims . . . arising out [of] Contractor's performance of the services it provides under . . . this Agreement." Reflecting the terms of the general conditions, each package states, "The Contractor shall provide and maintain all temporary protection for his work areas," and "The Contractor and its employees shall not have access to or be admitted into any area of the premises outside the site except with the written permission of Riverbay." As Riverbay concedes, "work on individual sets of buildings was to be performed in stages," and the listing of the documents comprising the contract, together with the inclusion of an indemnification provision in each of the 10 packages corresponding to those stages, demonstrates that the scope of its indemnity provision is limited to the particular job site covered by the individual package.

That Proto's contractual duty was confined to the work to be performed in respective designated areas during specified time periods is clear from several other provisions contained in the several packages. First, commencement of work at a particular site requires notice from Riverbay: "No work shall commence until Riverbay issues an Order to Proceed in writing which will set forth the date upon which work is to commence." Second, the time within which the work is to be completed is measured "from the date of the Order to Proceed by Riverbay Corporation." In addition, the definitions section of each package provides, "Whenever used in this contract . . . [,] [t]he term 'Work' means the work, supplies, equipment, labor and materials specified and the obligations imposed upon the Contractor under this contract." The use of the "this contract" language in each of the 10 packages and the measurement of timely completion from the date of the Order to Proceed indicates that performance is divisible and governed by a series of discrete contracts (see Rentways, Inc. v O'Neill Milk & Cream Co., 308 NY 342 [1955]). The contrary assertion that the work was a "single undertaking" imposing liability on Proto for the maintenance of all sidewalk sheds on Riverbay's property from the time the contract was awarded in 2005 would require the anomalous conclusion that Proto was responsible for the condition of a structure at a location to which it was denied access and where it was forbidden to perform any work because the requisite order to proceed had not yet been issued.

Because Proto received the notice to proceed with the work encompassing Building 8 on May 26, 2010, well after plaintiff was injured on July 10, 2009, it had no duty to inspect or repair the sidewalk shed that she alleges was negligently maintained, and there is no basis for contractual indemnification. Whether, as Riverbay alleges, Proto may earlier have undertaken repairs on other sidewalk sheds on Riverbay's property—gratuitously or otherwise—has no bearing on its obligation to indemnify Riverbay for damages arising out of the accident involving the subject sidewalk shed. Concur—Tom, J.P., Acosta, Andrias, Freedman and Feinman, JJ.